UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES CHEN,<br><br>Defendant. | No. SACR17-00061<br><br><u>I N F O R M A T I O N</u><br><br>[18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. §§ 982(a)(7), 981(a)(1)(C); 28 U.S.C. § 2461(c): Forfeiture] |

The Acting United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1347]

I.  GENERAL ALLEGATIONS

At all times relevant to this Information:

A.  <u>Defendant and Others</u>

1. Defendant JAMES CHEN ("defendant CHEN") resided in Los Angeles County, California.

2. Clevis Management Inc., doing business as Haeoyou Pharmacy ("HY"), was a corporation owned and controlled by defendant CHEN, with its principal retail pharmacy business located at 38656 Medical Center Drive, Palmdale, California, and its headquarters located in the City of Commerce, both within

1  the Central District of California. From its retail location,
2  HY filled prescriptions for medications, including those
3  compounded medications more fully described below. From its
4  headquarters location, and for the purpose of generating income
5  through submitting claims to TRICARE, as described below, and
6  insurance companies, HY coordinated the work of so-called
7  marketers to obtain prescriptions for medications and owned and
8  operated an Internet-based "telemedicine" site known as
9  "Healtharchy.com," through which individuals could seek
10 prescriptions for medications without actually being examined by
11 a physician or other person authorized to prescribe medications.
12        3.   Trestles RX LLC and Trestles Pain Management
13 Specialists LLC (collectively "Trestles RX") were business
14 entities located at 25971 Pala, Suite 120, Mission Viejo,
15 California, in the Central District of California, and were
16 operated by Co-Schemer #1, Co-Schemer #2, Co-Schemer #3, Co-
17 Schemer #4, and others.
18        4.   Co-Schemer #5 was the pharmacist-in-charge of HY's
19 retail location in Palmdale, from which he supervised other
20 pharmacists and staff and directed them to fill, or otherwise
21 authorized the filling of, prescriptions, including
22 prescriptions for the compounded medications described below.
23        5.   Co-Schemer #6 and Co-Schemer #7 were residents of the
24 State of Florida who negotiated, and received referral fees
25 pursuant to, an agreement between Trestles RX and HY.
26    B.   <u>TRICARE</u>
27        6.   TRICARE was a health care benefit program, as defined
28 by 18 U.S.C. § 24(b), that provided coverage for Department of

Defense beneficiaries world-wide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.

7. For the calendar year 2013, HY submitted approximately zero claims to TRICARE for reimbursement for filling prescriptions for compounded medications as described below. For the calendar year 2014, HY submitted approximately 31 claims to TRICARE, substantially all of which were submitted in the month of December 2014, for reimbursement for filling prescriptions for compounded medications, as described below, for a total claimed amount of approximately $81,401. For the period of approximately January 1 through May 31, 2015, inclusive, HY submitted approximately 2,798 claims to TRICARE for reimbursement for filling prescriptions for compounded medications, as described below, for a total claimed amount of approximately $62,654,938.

    C    <u>Compounded Medications</u>

8. In general, "compounding" is a practice by which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug or multiple drugs to create a drug or medication tailored to the needs of an individual patient. Compounded medications are not FDA-approved, that is, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded medications. The California State Board of Pharmacy regulates the practice of compounding in the State of California.

9. Compounded medications may be prescribed by a physician when an FDA-approved drug does not meet the health needs of a particular patient. For example, if a patient is allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded medication can be prepared excluding the substance that triggers the allergic reaction. Compounded medications may also be prescribed when a patient cannot consume a medication by traditional means, such as an elderly patient or a child who cannot swallow an FDA-approved pill and needs the medication in a liquid form that is not otherwise available.

II. THE FRAUDULENT SCHEME

10. Beginning on or about a date unknown, and continuing to in or about June 2015, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant JAMES CHEN, Co-Schemer #1, Co-Schemer #2, Co-Schemer #3, Co-Schemer #4, Co-Schemer #5, Co-Schemer #6, and Co-Schemer #7, together with others known and unknown to the Acting United States Attorney, knowingly, willfully, and with the intent to defraud, executed and attempted to execute a scheme and artifice: (1) to defraud TRICARE as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (2) to obtain money from TRICARE by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

11. The fraudulent scheme operated, in substance, in the following manner:

   a. Defendant would own and control HY and would cause HY to enter into agreements with Trestles RX, as negotiated by Co-Schemer #6 and Co-Schemer #7, and others, and would cause HY to hire in-house staff, to refer prescriptions for compounded medications ("CM prescriptions") to HY in exchange for huge kickbacks that would be paid from reimbursements from TRICARE.

   b. Defendant CHEN would cause claims to be made to TRICARE for reimbursements based on the CM prescription referrals, knowing that the CM prescriptions were suspicious, if not fraudulent, because, among other things:

      (1) None of the CM prescriptions arose from a bona fide physician-patient relationship as required by TRICARE rules;

      (2) Substantially all of the CM prescriptions were electronically sent to HY from marketers, instead of from the (purported) prescribing physicians or the patients, even though a large number of the CM prescriptions contained a facsimile header or similar information that falsely stated that the sender was a "doctor's office" or similar reference that identified the sender as a health care provider;

      (3) Substantially all of the CM prescriptions were identified using an identical or nearly identical form with pre-formulated compounds, unlike the typical prescription forms that HY received and acted upon;

(4) Substantially none of the patients for whom CM prescriptions were provided, and for which HY filled and submitted claims to TRICARE, ever paid, nor did HY attempt, or intend to collect, any copayment, even though HY knew that it was required to collect a copayment for each CM prescription under TRICARE rules;

(5) HY mailed substantially all of the filled CM prescriptions to the patients in numerous states where, as was commonly the case, it was clear from the CM prescriptions that the purported prescribing physicians were in different states from the patients;

(6) HY conducted substantially no due diligence upon receipt of the CM prescriptions to verify whether, in fact, the patients actually sought the subject CM medications, even though, shortly after HY entered into its agreement with Trestles RX, defendant CHEN and his staff knew that HY had called a random sample of CM patients, each of whom denied seeking the CM prescriptions;

(7) The CM prescriptions were of questionable, if any, medical value as all were for generic pain, scarring, stretch marks, erectile dysfunction, or "metabolic general wellness" (vitamins);

(8) The compounded formulations for each of the purported maladies were virtually identical from patient-to-patient and none of the CM prescriptions was specifically formulated based on the individualized needs, medical history, allergic reaction potential, contraindications, or conflicts

with other prescription medications that were unique to the particular patient;

    (9) HY had filled substantially no similar prescriptions in the two previous calendar years, except for approximately 30 such prescriptions in December 2014 (that resulted from HY's negotiations with Trestles RX);

    (10) HY intended to submit each of the CM prescriptions to TRICARE for reimbursement because few, if any, insurance carriers or entities would at the relevant time honor claims for reimbursement for similar prescriptions; and

    (11) The amounts that HY claimed to TRICARE for reimbursement for each CM prescription were astronomical compared to the previous or other claims that HY typically submitted for reimbursement.

### III. EXECUTION OF THE FRAUDULENT SCHEME

12. On or about the dates set forth below, within the Central District of California, and elsewhere, defendant CHEN, together with others known and unknown to the Acting United States Attorney, knowingly and willfully executed and attempted to execute the fraudulent scheme described above, by submitting and causing to be submitted to TRICARE, on behalf of HY, the following false and fraudulent claims:

    a. On or about March 3, 2015, a claim for filling a CM prescription sent to HY by or through Trestles RX, purportedly authorized by R.M., regarding beneficiary E.G., for which TRICARE paid HY approximately $46,982;

    b. On or about March 19, 2015, a claim for filling a CM prescription, purportedly authorized by Dr. H.C., regarding

7

beneficiary K.D., for which TRICARE subsequently paid HY approximately $194,707; and

    c. On or about March 24, 2015, a claim for filling a CM prescription, purportedly authorized by Dr. G.E., regarding beneficiary M.R., sent to HY by HY in-house marketer Y.H., for which TRICARE subsequently paid HY approximately $59,944.

FORFEITURE ALLEGATION

[18 U.S.C. §§ 982(a)(7), 981(a)(1)(C);

28 U.S.C. § 2461(c)]

13. Pursuant to Federal Rule of Criminal Procedure 32.2(a), notice is hereby given to defendant JAMES CHEN that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Sections 982(a)(7) and 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this Information.

14. Defendant shall forfeit to the United States the following property:

    a. 2016 Lamborghini Huracan Vehicle Identification Number (VIN) ZHWUC1ZF2FLA02145, registered to Clevis Management Corporation or James Chen, 13181 Crossroads Parkway North, Suite 200, City of Industry, CA 91746, with a California license plate of 7LJW395;

    b. 2015 Lexus VIN JTHHP5BC1F5002031, registered to Scott Ishikawa, 16338 East Badillo Street, Covina, CA 91722, with a California license plate of 7LJP571;

    c. 2012 Toyota VIN JTDKN3DU8C5403966, registered to Scott Ishikawa, 16338 East Badillo Street, Covina, CA 91722, with a California license plate of 7NNR032;

    d. 2015 Toyota VIN JTDKN3DU8F0451615, registered to Jonathan Lung or Sum Ka Yun Lse, 712 Padilla Street, Aprt 2, Sam Gabriel, CA 91776 with a California license plate of 7LKF005;

  e. 2015 Cadillac VIN 1GYS4TKJ0FR639613, registered to Clevis Management Corporation or James Chen, 13181 Crossroads Parkway North, Suite 200, City of Industry, CA 91746, with a California license plate of 7KKD152;

  f. 2015 Lexus VIN JTJBARBZ6F2027199, registered to Regina Ly, 3436 Twin Avenue, Rosemead, CA 91770, with a California license plate of 7LVR832;

  g. 2014 Lotus Evora VIN SCCLMDTU0EHA10061, registered to Clevis Management Corporation, 38656 Medical Center Drive, Suite C, Palmdale, CA 93551, with a California license plate of 7KYJ589;

  h. all right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of the offense set forth in Count One of this Information; and

  i. a sum of money equal to the total value of the property described in subparagraph h.

 15. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b), the defendant shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of a defendant, the property described in the preceding paragraph, or any portion thereof:

  a. cannot be located upon the exercise of due diligence;

        b.   has been transferred, sold to or deposited with a third party;

        c.   has been placed beyond the jurisdiction of the Court;

        d.   has been substantially diminished in value; or

        e.   has been commingled with other property that cannot be divided without difficulty.

SANDRA R. BROWN
Acting United States Attorney

*/s/ Scott Garringer*
Scott Garringer
Deputy Chief, Criminal Division
For:

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

GEORGE S. CARDONA
Assistant United States Attorney
Chief, Major Frauds Section

STEPHEN A. CAZARES
Assistant United States Attorney
Deputy Chief, Major Frauds Section

MARK AVEIS
PAUL G. STERN
CASSIE D. PALMER
Assistant United States Attorneys
Major Frauds Section